For the record, my name is David Ness, and I'd like to say at the outset that Council for Montana appreciates being in front of the Ninth Circuit. In particular, this time, we're supposed to be 35 below in Montana tonight, so it's a pleasure to be in 40 above. As the Court is aware, this is an appeal resulting from a resentencing. Mr. Bad Marriage was sentenced to a term of 41 months. Originally, that term resulted from an upward departure based on criminal history. On appeal, this Court found that the sentence was not justified by the facts and that the standards set by the United States Sentencing Guideline, there was nothing to suggest that that standard was inadequate. The case went back to district court after Booker sentenced Mr. Bad Marriage to a term of 48 months, essentially rejecting the Ninth Circuit's decision in the original appeal. I think from the outset, the important thing for the Court to focus on is the exact issue that the original panel confronted. And I can quote from the opinion. What this Court sought to determine in the original case was whether the departure was based on a factor that did not advance the objectives set forth in Section 35538A or was not justified by the facts. And, of course, it determined that, in fact, the sentencing post on Mr. Bad Marriage did not advance the factors set forth in the sentencing statute, nor was it justified by the facts of the case. If one looks at the post-Booker standard, essentially we're looking at the same issue in both cases. Both cases involve an analysis of the sentence as applied to the factors set forth in the sentencing statute. I thought the initial decision of the Ninth Circuit was based on an erroneous decision to find the criminal history to be inadequate. It focused on the impropriety of upgrading the criminal history calculation. But that was not a factor in the resentencing. In the initial paragraphs of the opinion, the panel set out the standard of review, which I think also can substitute as the issue in the case. And what they said is they were going to review the departure to determine whether or not the departure advanced the goals of the sentencing statute. And that was actually the issue of the case. Now, they did go through and they reviewed Ninth Circuit case law as it applied to Chapter 4, the sentencing guidelines. But nevertheless, ultimately what they determined was is that the departure, the upward departure, in fact, was not justified under either the facts or the law. And I think that that has some important repercussions, because it has repercussions on the first issue of whether or not the district court exceeded this Court's mandate. Because I look at the issue in the initial decision to essentially be the or I guess I'll say that Booker really had no advance, no change upon the district court's sentencing responsibility. It really didn't change. The Court in both cases was required to sentence Mr. Badmerage to a reasonable sentence. And that reasonable sentence would be determined through guidance of the sentencing statutes. So when the district court essentially regards the district court on the remand did go back over the legislative history, I mean, the criminal history and recidivism issues to some degree, and to that degree, the earlier determination by the Ninth Circuit seemed to be pertinent. He also seemed to emphasize on the remand the violence of the particular crime. And I think that that's something that could have been taken into account on the original appeal at stake. And it's not clear to me whether that was taken into account or could have been taken into account on the original appeal. That doesn't – I mean, that still may lead to the need for a remand, because he did to some degree take into account the factors that the Ninth Circuit had already dealt with. But I think he may have done one additional thing at this point. The interesting thing about that is that the Court did in fact, and you can look in the original sentencing transcript that was included in the government's excerpts, the Court did in fact consider the violence of the crime in determining whether or not to depart upward. And he says that explicitly. The first time around. The first time around. He said, I considered the facts of the case to determine whether or not the facts of the case in and of themselves. But the Ninth Circuit seemed to, in a very lengthy opinion, seemed to say that at that juncture, to go from one criminal history category to another, there were only two considerations, which was recidivism, likelihood of recidivism and the seriousness of the crime. And so they seem to be discounting the violence issue as being possibly pertinent at that point. And would you agree that the violence issue is possibly pertinent at this point? It is pertinent at this point. In other words, it was not the original opinion didn't really address this directly, but seemed to be assuming that any considerations other than criminal history considerations were just not pertinent to the particular departure that was at issue in that case at that point. I think that's true, at least as far as the actual departure was concerned.  The actual departure dealt with criminal history. So if the district court originally considered it, that was impermissible at that point? Impermissible. For him to consider the violence of the actual crime in deciding whether to up the criminal history category. Whether to up the criminal history, but not, not, certainly not, not on the overall sentencing determination. And the guidelines allowed for that. I mean, the Court could take into consideration the actual conduct of the crime and use that to depart upwards. But the particular departure upward that he used was only the criminal history, and that's why only those considerations were pertinent. Yeah. So now we're in a somewhat different ballpark, and the violence issue might be directly of the crime, might in fact be ultimately pertinent to the reasonableness. It would be. I guess I. But that isn't all the district court relied on now. It relied in part on that, but not only on that. Right, right. But let me point out something else, too. I think that that, if that would go to the vindictiveness on sentencing issue, because the Court explicitly considered that information in imposing the original sentence, and apparently decided that those factors did not justify an upward departure, did not really impact its analysis under Section 3553A. To then go back and use that stuff when the Court relied on the same record, there was no new evidence presented at resentencing, is not something that was appropriate, would not justify a higher sentence, I think, under this Court's precedence. And so I would suggest should not justify or otherwise not justify the higher sentence that was imposed by the district court. If the panel has no other questions, I'll save the remaining two minutes for rebuttal. Thank you. That's fine. Please do so. The district court was in a difficult position here because what it did was initially it sentenced this individual under mandatory guidelines. And I think in the first case, although the district ultimately disagreed with its assessment that an increase in the criminal history would be appropriate, the Court was operating under a mandatory guideline system. And then the second time that it sentenced this individual, it was not. It was operating under the Booker system. Under the first system, presumably they could have departed upward based on the violence and the depravity of the particular crime. Could he have? Yes, he could have, Your Honor. He didn't do that. No, he did not. Now he did. Yes, he did. Why does the presumption of indignity arise at that point? Well, and there was a colloquy between Mr. Ness and the Court after the sentence was imposed in which the Court essentially said that the first time that he imposed a reasonable sentence under the mandatory guideline sentencing system, that he felt obliged to operate within the confines of that. And that apparently he felt that this criminal history increase was appropriate, which this Court later found that it was not. But I think that he stated very affirmatively on the record that he was operating under a new sentencing system and that for that reason that he felt that a reasonable sentence in this case was one that would, in fact, take into account, I think his terms were the brutality and hostility of the assault. And while it may not have been adequate, although he didn't say this, but certainly it was my interpretation that while it may not have been adequate to have considered that for a departure or sufficient for a departure under the guideline system, that it did enter into his assessment of whether or not it was a reasonable sentence. And I think that that dispels this presumption of vindictiveness in this instance. The judge was simply looking at, albeit the same facts, but from a different legal perspective, and was essentially entitled, I think, under Booker to view those facts maybe slightly differently because he's viewing it not from a mandatory guideline system, but from a reasonableness of some. On the recidivism in criminal history grounds, he still relied on that to some degree? No. He made some commentary about that. And why isn't that just, aside from the more narrow question of whether the mandate directly applies, i.e., whether we have a sentence precisely to the guidelines, certainly it was the law of the case, was it not, that to sentence bad marriage to a longer prison term on the basis of that record would serve no useful purpose? And there's a long exegesis in the prior opinion about how the recidivism in prior history in this instance essentially did not justify a longer sentence because of the alcoholism, because of the need for treatment and so on. And he just disregarded all that. He obviously didn't like it. He made some comments, I think, about the prior opinion. I won't speak for what his reaction was, Your Honor. I'll leave that to this Court to determine. However, I think that what he did attempt to do in this case was he attempted to articulate what his reasoning was in this case. And I think that ultimately, as he explained it at the second sentencing, his concern really in assessing reasonableness of sentence had to do with the nature of the assault. And I think by any standard it was truly an exceptionally brutal, aggressive crime. This individual had been locked up in jail. He was essentially allowed to leave the jail in order to attend an alcoholist anonymous meeting. Instead, he engaged in this assaulted behavior. I think that in assessing reasonableness of a sentence, that a court could certainly consider that. And Judge Haddon stated that he did that in this instance. And I certainly think that that statement dispels the contention that he actively paid for it. Unless the panel has other questions, I'll resume my seat. I don't. Judge Schwartzer? Judge Prezant? Further questions? Thank you. Thank you. Thank you. Now, rebuttal argument, please. I think just one point, and it goes to the vindictiveness on the sentencing issue. According to Pierce and this Court's precedent, the information that can be used to actually increase a sentence on remand is objective information concerning identifiable conduct on the part of the defendant that arose after sentencing. There was no conduct that arose after sentencing that the district court used. He confined himself to the original record and upped the sentence based upon Booker, not any sort of objective conduct on the part of Mr. Badmarriage. So I don't think that Booker or the Court's view that there was a change in the law would support the increase in sentence. I would simply urge the Court to reverse and remand this case, to send it back with the original instructions by the original panel that Mr. Badmarriage be sentenced within the originally calculated guideline range. Well, that seems difficult, because there was a – that guideline range no longer applies mandatorily. And so how can we order the judge to apply it? We can order him to comply with the law of the case insofar as the law of the case made certain determinations with regard to the significance of the criminal history. But how can we order him to comply within – to a certain guideline range? Well, because in this case, number one, the instructions back to the district court was to sentence Mr. Badmarriage within the appropriate guideline range. But perhaps more importantly is that this Court made a number of findings that actually went to the reasonableness of that guideline sentence. It made findings in particular that a longer term would serve no legitimate purpose. It made findings that the factors under Section 3553A would not mandate a sentence that was any longer than the original guideline term. But I just want you to know it. There are a number of cases, it turns out, from other circuits in similar circumstances, and most of them involved longer sentences that the district court disregarded on remand and shorter sentences after Booker. And a rule that they couldn't do that would obviously be a two-inch sword. It would run both ways. In other words, if the district court – if the court of appeals remanded 20 years because that's where the guidelines got you, and then the district court says, oh, you know, now I don't have to do this, follow the guidelines wager originally, and I don't regard this mandate as binding on me because it didn't take that into account, and I'm going to redo it all under Booker, and it did, and there were several cases like that. So if we have a rule that says you have to follow a pre-Booker mandate, it seems to me that we're, in cases going in both directions, binding judges in circumstances in which there were just different rules that apply now. I would just say I think that this case is unique. I don't think that if this Court were to remand this case with instructions that the district court sentenced Mr. Badmarriage within the original guideline range, that that would have any effect on other cases, maybe any other cases that come up. It wouldn't be simply a rule that you have to follow the mandate wherever it was. It would be a rule that this particular one was based on what really matched to a reasonableness determination. Yeah, I'm not completely sure I understood you, but, yeah, you have to follow the mandate. And the mandate in this case was that if you remanded, Mr. Badmarriage be sentenced within the guideline range. Thank you. I have nothing. Okay. Do you want to go forward? Yes. United States versus Badmarriage is submitted.
judges: Gould, Berzon, Schwarzer